I don't know. Should I ask for questions first, or should I start? Why don't you go ahead. Okay. Excuse me. I'm assuming, well, the point that I'm going to focus on is specifically with regard to how Crawford affects this case and also to some extent how Hendricks might or might not affect this case. And I think first, I think that there should not be much dispute that the tapes that were made with Mr. Smith, everybody knew that if there were a criminal prosecution, somehow those tapes would get into evidence, or at least there'd be a try. Excuse me? I said, well, at least there'd be a try by the government. There might be a motion to exclude them on some basis, but these were supervised tapes by law enforcement officers with this information. Does that make it testimonial? What's the significance of that? I mean, it doesn't seem to me that the information that you're complaining about wasn't admitted for the truth of anything, just to explain what was going on. Okay. I'm going to disagree with you respectfully. In fact, there were several statements that were being used for their truth. They were laid out on page 9 of the brief. I can go back over them. Why don't you go back over them? Okay. The statement that Mr. Smith was going to send 22 or 23, that's the statement? Who made that statement? Mr. Smith. You know, anything Mr. Smith or the Mr. Smith, the informant. He's the informant, correct. Anything Mr. Puryear says obviously is an admission, and I'm not arguing to keep that out. So what difference does it make whether Mr. Smith sends 22 or 23? The question as to what difference, the question is, well, here's the difference. If Mr. Smith says, I'm going to send 22 or 23, Mr. Puryear says, that'll take care of 9. I mean, obviously Smith is lying. Well, obviously not. He sent the money. He's not planning to send anything. Well, but he did. But the government says the jury says, don't believe anything Smith says. Smith is a liar. No. But, no, what they don't say, what they say is you don't have to believe anything Mr. Smith says to convict the defendant. But the question is, during the course of the conversation, number one is, is Mr. Smith's statements being taken by the people in the conversation to be true? Clearly they are. Were they, in fact? What difference does it make? They were not adjudicating Smith's guilt. They were adjudicating your client's guilt. And the stuff on the tape that matters is all the stuff that your client said. The fact that they were feeding him lies, which may have been true lies or false lies, doesn't matter. What they got on the tape is that your client was agreeing to do all these criminal things. Well, let me give the Court an example. Okay. Give me a hard fact. Give me a hard fact that doesn't come out of your client's mouth that, in fact, makes a difference to your client's conviction. Okay. The statement having to do with where to send the money. Okay. Send the money to the following address. Well, that's not even a fact. That's a direction. That's a direction. It doesn't have a factual assertion at all. Well, see, I disagree with that. It's a statement being used, being given to the jury for the truth of the fact asserted. The truth. The truth is that's where the money is to be sent. That's a direction. That is instruction saying send the money there. It doesn't even prove that the there exists. It certainly does not prove that your client, in fact, sent the money there. It's a direction. Again, I think we have a different understanding. What difference does it make in terms of your client's conviction? Let's say that is a fact, that we're a fact, which I don't see at all, but okay. Okay. How does it contribute to your client's guilt? Okay. Because the money ends up showing up at that address. There's a DHL package that's sent to that address. And the implication is that Mr. Puryear sent the package to that address. Right? Okay. So how does this fact help contribute to your client? Because Mr. Puryear was told during this conversation this is the address to which to send the package. And the fact that he was told is a fact. That's on the tape. I mean, the fact that somebody said the words and gave them that instruction, that is a fact. No, it's not only that. No, but that is a fact. Right. That is a fact. And then the next thing that happens, money in that amount shows up at that address. And from that you can infer, because your client was a listener to that statement, that he must have sent the money. After the drudge, it's going drudge to the family. I'm sorry, not his money. Right. Whatever it is, that's in question, right? So where does the credibility of Mr. Smith come into question? I mean, that's the whole point of hearsay is we can't tell whether or not the declarant, this guy who's not under oath, is telling the truth. Let's say the guy was lying. Mr. Smith was lying through his teeth. Right. How would that change the inference? Well, let's start with number one. He, in fact, wants him to send the money not to that address, but he wants him to send the money to some other address. But he lies. He gives him the wrong address. And then the money shows up at the wrong address. It doesn't make any difference. No, that wouldn't make any difference.  That's a test for hearsay. You ask the question, if the declarant were lying, would that make a difference? If it does make a difference, then it's not hearsay. Well, I'm not sure that's the exact test. That is the exact test. But let me... Because that tests whether or not the statement is being admitted for the truth of his assertion. Okay. So you say, if the guy's lying, you know, if somebody, for example, says Gesundheit, right, it doesn't matter whether the guy's lying. He said Gesundheit. Right. You know, he's present. He's able to speak. It proves all those things that you... What do you do with a judge when he says they're referring to the informant's statement on the tape? They're clearly not offered for the truth of the matter asserted. Just to show context and explain behavior. Okay. What the problem with what do I do with the statement other than to say that it's partially incorrect and that there is hearsay and there's nonhearsay in Mr. Smith's statements. But the problem is that these statements came in without a limiting instruction. Did you ask for one? No, but there would have been no reason to ask for a limiting instruction because, number one, Crawford hadn't been decided yet. So the argument was made, these are a violation of the Confrontation Clause. The judge says, you're wrong. Where's their who would ask for a limiting instruction there? Everybody. I wrote exactly what you said once in an opinion. The Supreme Court slapped me down. They said, no objection. Forget it. No request for an instruction. Plain air analysis at the very best. The problem is that at that point Crawford hadn't been decided. Crawford really changed the law. Now we have Hendricks, which basically says here's the way you ought to do it and kind of laid it out. But in this case, there would have been no reason. You're going to ask for it. Excuse me, Your Honor. We need a limiting instruction that this is not for the truth of the matter asserted. This is just to put it in context. I've tried over 100 cases. I've never seen and I've probably done 300, 400 appeals, maybe more. I've never seen a limiting instruction like that. I've never seen anybody ask for one. At that point, the judge had said. I've seen judges many times say, ladies and gentlemen, this information is admitted not for the truth of the matter asserted, but simply to explain conduct or context. Okay. I'm not sure I've ever seen that. But even. That's how you distinguish hearsay from non-hearsay. But we also have the judge basically saying we have no problem here. It seems to me futile to ask for an instruction. Hasn't the judge just said there's no problem? No problem at all. But the fact remains you didn't ask for an instruction. Yeah, but one doesn't have to do something that's a futile act. It's true. There was no request. It's only the United States v. Keyes. No. I wrote that. I wrote exactly that in a case. And the Supreme Court told me, forget it. You are wrong. Well, I wrote faced with a solid wall of circuit authority saying you don't have to do something. We're not going to hold it against you if you don't. The Supreme Court told me, said, forget it. They didn't make the they didn't make the objection. It's a plein air analysis. Well, I do. I do want to. Do you have any other points you wish to make? I do. I do. Because I want to point out that with regard to hearsay, that in terms of the analysis as to whether something is a statement that puts a defendant's admissions into context or whether it's hearsay, one of the things to look at is, and I'm actually going to use an example that sort of fits into what you stated, Judge Kuczynski, and that is if there's an automobile accident and a person says to the person who's sort of accused of doing the accident, the defendant in the accident, you went through a green light. And the person says, no, I went through a red light. Obviously, that would be an admission. And the statement, you went through a green light, puts it in context. If the person says you went through a red light and the defendant says yes, right, the defendant's statement is clearly an admission. I went through the red light. But to believe that, doesn't the statement from the person who made the statement have to be true? No. Not at all. Not at all. That's what I'm talking about earlier. You say, ladies and gentlemen, that's not admitted for the truth of the matter asserted. Simply to explain the answer. Well, but. The guy could have been blind and he says you went through a green light because he's guessing or what, and the guy says, yes, I did. At that point, the fact that the questioner had no way of observing it doesn't matter at all. Because it is the, by giving the answer, the party has admitted, has made an admission. But for the jury to understand the admission, the jury has to believe, regardless of whether the person made the statement or not knows whether it's true. The jury has to believe that the statement itself, the light is red, was true. Absolutely wrong. No, absolutely wrong. Okay. Well. Not in the least. Okay. I say 101. No. I'm, you know, I've gone back over this and I, you know, I'm going to respectfully disagree. Because if the jury doesn't believe the statement is red is true, then the statement yes doesn't mean anything. Why is that? Because they have to, because they have to believe the first part of the statement. What is the question? What is the question? What if the policeman comes along afterwards and says, was the light red? And the guy says yes. Does the policeman's question have to be true? The police, but that's a question, not a statement. And if it's a question, then it's not hearsay. But if it's a statement, then it is hearsay. What if the policeman says, the light was red? You know, he's a tough guy. He's one of these tough guy policemen, and he's going to get an admission out of this guy by acting like maybe he was present. So, you know, the guy doesn't know. Maybe the police car was around the corner. The policeman walks up, knows nothing whatsoever, walks up to the guy and says, light was red. That's right, officer. It doesn't matter. It doesn't matter what the policeman saw or didn't see. The point that matters is that the guy says yes. That makes it an admission. I'm not arguing that it's not an admission. You used what the police officer said to explain what the admission means, not to the truth of the matter asserted in the allegation. But it has to be true or it doesn't matter to what the defendant says. Of course it doesn't have to be true. We got your position. Okay. We understand. Any other points you wish to raise? I think not. Okay. Thank you. Thank you. And please record, good morning, your Honor's Bill Crawford for the United States. Is there anything you've heard this morning that was not adequately addressed in your brief? No, your Honor. Thank you. Thank you. Thank you, sir. The bill stands submitted. We are adjourned. All rise. The Court of Accessions stands adjourned. Thank you. Thank you. Thank you. Thank you.  Thank you.  Thank you.
judges: Kozinski, Trott, Sand